IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GRENVILLE DIVISION

**BERNICE CARSON BOONE,**                              **PLAINTIFF,**

**VS.**                                     **CIVIL ACTION NO. 4:04CV158-P-B**

**MISSISSIPPI VALLEY STATE UNIVERSITY**
**and RAFUS DAVIS,**                                    **DEFENDANT.**

## MEMORANDUM OPINION

This matter comes before the court upon Defendants' Motion to Dismiss and/or for Summary Judgment [34-1]. Upon due consideration of the motion and the responses filed thereto the court is prepared to rule.

As a preliminary matter, the instant motion shall be treated as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(b) since the defendants have requested the court to consider matters outside of the pleadings.

### I. FACTUAL BACKGROUND

Bernice Carson Boone was employed as a trainee police officer for the Mississippi Valley State University police department from April 23, 3002 to November 3, 2002, approximately seven months. On October 3, 2002, Boone received a letter informing her that she would be terminated effective November 3, 2002 for failure to pass the police academy. On the day after she received the termination letter, Boone filed a grievance letter in which she recognizes she was terminated for failure to pass the academy while asserting that her immediate supervisor, Chief Rafus Davis, negligently failed to prepare her for the academy. Attached to the October 4, 2002 letter was a two-page handwritten letter setting forth various claims of sexual harassment

1

perpetrated upon her by Davis.

It is undisputed that Boone never reported any claims of sexual harassment to the University until after she received her termination letter.

On June 1, 2004 Boone filed the present case alleging employment discrimination in the form of sexual harassment pursuant to Title VII against both the University and Rafus Davis. In said complaint, the plaintiff asserts twenty-four separate inappropriate sexual acts or advances made by Davis, many of which are allegations of serious misconduct by Davis. Although the complaint maladroitly states her causes of action, it is apparent that the plaintiff seeks compensatory and punitive damages under 42 U.S.C. §§1981a(a)(1) and (b)(1), respectively, against the University and Davis for violation of Title VII, 42 U.S.C. § 2000e, *et seq*. in the form of *quid pro quo* and hostile work environment sexual harassment.

The defendants have filed the instant motion for summary judgment, arguing that (1) there can be no recovery against Davis in his individual capacity because Title VII only covers "employers," not supervisors in their individual capacities; (2) the plaintiff cannot prove the necessary elements for either *quid pro quo* or hostile work environment sexual harassment; and (3) given there is no proof of *quid pro quo* harassment, the defendants can establish the *Ellerth/Faragher* defense.

In opposition to the motion for summary judgment, the plaintiff has submitted the testimony of several witnesses in the form of affidavits and depositions. Some testimony corroborates Boone's complaints of sexual harassment by Davis. Other testimony alleges that the University has been on notice of Davis's alleged proclivity for sexual harassment as evidenced by the complaints filed by four female officers before the plaintiff's arrival.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for

summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5 Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5 Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5 Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*., at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*., at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 939 (WD Tex. 1982).

## B. Claims Against Rafus Davis in His Individual Capacity

The plaintiff has made no attempt to seriously dispute the defendants' argument that her sexual harassment claims under Title VII do not apply to Rafus Davis in his individual capacity

4

because he is not an "employer" within the meaning defined by Title VII. Thus, even viewing the facts in a light more favorable to the plaintiff, there is no genuine issue of material fact that necessitates a trial on this particular matter. Accordingly, the court concludes that the plaintiffs claims against Rafus Davis should be dismissed with prejudice.

## C. Claims Against the Employer

Essentially, the plaintiff alleges that MSVU is liable under Title VII for both *quid pro quo* and hostile work environment sexual harassment.

To establish *quid pro quo* sexual harassment the plaintiff must demonstrate that she suffered a tangible employment action resulting from her acceptance or rejection of a supervisor's alleged sexual harassment. *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474 (5th Cir. 2002). A tangible employment action constitutes a significant change in employment status, such as refusing to hire, termination, or failure to promote. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Under the *quid pro quo* theory, the employer is strictly liable for the actions of its supervisors regardless of any remedial actions taken and no affirmative defenses are available. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1254 (U.S. 2003). The five elements necessary to establish *quid pro quo* sexual harassment are: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the employee's reaction to the harassment complained of affected a tangible employment action; and (5) the harasser was the employee's supervisor. *Burlington*, 524 U.S. 742; *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

For a plaintiff to prevail on a hostile environment sexual harassment claim, she must meet

the following elements: (1) the employee is a member of a protected group; (2) the employee was subject to unwelcome harassment that was sufficiently severe or pervasive to create a hostile work environment; (3) the harassment complained of was based on the employee's gender; (4) the harassment did not result in a tangible employment action [in which case it would be *quid pro quo* harassment]; and (5) the harasser was the employee's supervisor. *Burlington*, 524 U.S. 742; *Faragher*, 524 U.S. 775; *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642 (5th Cir. 2002).

The Fifth Circuit Court of Appeals recently simplified the standards for supervisor sexual harassment under Title VII:

> First we determine whether the complaining employee suffered a 'tangible employment action.' If [s]he has, the claim is classified as a 'quid pro quo' case; if [s]he has not, the claim is classified as a 'hostile environment' case. In a quid pro quo suit, proof that a tangible employment action resulted from a supervisor's sexual harassment renders the employer vicariously liable, and no affirmative defense can be asserted. In a hostile environment case, however, the next inquiry is whether the supervisor's actions constituted severe or pervasive sexual harassment: If the conduct was not severe or pervasive, the employer cannot be held liable vicariously for the supervisor's actions; if the conduct was severe or pervasive, the employer is vicariously liable unless the employer can establish both prongs of the conjunctive *Ellerth/Faragher* affirmative defense – the only affirmative defense to vicarious liability now available in a supervisor sexual harassment hostile work environment case. To establish the defense, the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment; *and* (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.

*Wyatt*, 297 F.3d at 409.

After an exhaustive review of the record, and taking into account arguments of counsel, the court concludes that it cannot be said there is no genuine issue of material fact justifying

6

summary judgment as to both the hostile work environment and the quid pro quo sexual harassment claims (though both are not available).

With respect to the plaintiff's *quid pro quo* claim, there is sufficient evidence requiring findings of fact by a jury tending to establish that the tangible employment action suffered by the plaintiff was Davis's inexplicable action of removing Boone from her second try at the academy. Because failing the academy, which Boone did the first time, is grounds for termination, not allowing her to finish the second time without explanation was tantamount to firing her. Of course, it is a question for the jury whether there was a nexus between removing Boone from the second academy attempt and her alleged refusal to accede to Davis's alleged sexual advances. This is a genuine issue of material fact even though Roberta Hines, who also failed her first attempt at the academy, was fired after being removed by Davis from her second try along with Boone. This fact is relevant, but is not dispositive of whether *quid pro quo* harassment occurred to the plaintiff.

With regard to Boone's hostile environment sexual harassment claim, there is sufficient evidence creating a genuine issue of material fact as to whether Boone was subject to unwelcome harassment sufficiently severe or pervasive to create a hostile work environment. The alleged conduct by Davis certainly meets the requirement of severe behavior and there is enough evidence, in the form of several witnesses, to create a question of fact regarding pervasiveness.

As discussed above, however, the plaintiff can only recover for sexual harassment under one, not both, of the theories. If the jury finds that she suffered a tangible employment action in the form of being constructively discharged by not allowing her to finish the academy the second time (especially since she was allowed to try), then *quid pro quo* harassment is established. This

would preclude recovery for hostile environment harassment. On the other hand, if the jury does not find a tangible employment action (*i.e.*, that Boone was not taken out of the academy for failure to accept Davis's sexual advances), then it must find whether or not there was unwelcome harassment sufficiently severe or pervasive to create a hostile work environment. If the latter, the jury must also determine whether the defendant meets both prongs of the *Ellerth/Faragher* defense.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendants' Motion to Dismiss and/or for Summary Judgment [34-1] should be granted in part and denied in part. Accordingly, an Order shall issue forthwith,

**THIS DAY** of June 9, 2005 A.D.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE